UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| STACEY AULTMAN, ET AL.<br>Plaintiff | CIVIL ACTION NO. 3:16-CV-01133 |
| VERSUS | JUDGE JAMES |
| ST. FRANCIS MEDICAL<br>CENTER, ET AL.<br>Defendants | MAGISTRATE JUDGE PEREZ-MONTES |

## REPORT AND RECOMMENDATION

Before the Court is a Motion to Remand (Doc. 11) filed by Plaintiffs, Stacey and Heather Aultman. Plaintiffs claim that Defendant St. Francis Medical Center ("St. Francis") – the only non-diverse Defendant – was properly joined. However, because Plaintiffs failed to exhaust their administrative remedies against St. Francis before filing suit, Plaintiffs did not have a cognizable claim against St. Francis at the time of removal. Remand is unwarranted.

I.  Background

Plaintiffs are residents of West Carroll Parish, Louisiana. On October 10, 2014, Plaintiff Stacey Aultman underwent an extreme lateral interbody fusion at St. Francis Medical Center. Plaintiffs allege that, after the surgery, Stacey Aultman remained paralyzed in his bilateral lower extremities, and is now bound to a wheelchair.

Drs. Bernie McHugh and Walter Sartor performed the surgery. Neither are parties to this lawsuit.

Defendants Dr. Vijay Maggio ("Dr. Maggio"), Amanda Schaefer ("Schaefer"), and Biotronic National, LLC ("Biotronic") (collectively, "Diverse Defendants") performed assistive roles in the surgery. Biotronic provided remote nervous system monitoring services to the surgeons who actually performed Stacey Aultman's surgery. Dr. Maggio and Schaefer were Biotronic employees who assisted in providing those monitoring services. Plaintiffs maintain that each of the participants in Stacey Aultman's surgery were negligent, and thus, caused or contributed to his current condition.

On August 20, 2015, Plaintiffs filed a medical malpractice complaint with the Louisiana Patients' Compensation Fund (the "PCF Proceeding"). In their original PCF complaint, Plaintiffs requested review of the treatment provided by St. Francis, Ouachita Neurosurgery Center, Dr. McHugh, and Dr. Sartor. Plaintiffs supplemented on May 16, 2016, adding Diverse Defendants to their PCF complaint. Nine days later, the PCF informed Plaintiffs that Diverse Defendants were not "qualified health care providers" under the Louisiana Medical Malpractice Act, La. R.S. 40:1299.41, *et seq.* ("LMMA"). St. Francis remains a party to the PCF Proceeding.

On June 23, 2016 – less than a month after being informed that Diverse Defendants were not "qualified health care providers" – Plaintiffs filed this lawsuit in the Fourth Judicial District Court in Ouachita Parish, Louisiana. Plaintiffs named Diverse Defendants and St. Francis. Plaintiffs' allegations are nearly identical to those made in the PCF Proceeding. Defendants removed, alleging St. Francis was

2

improperly joined. Plaintiffs then filed the instant motion, seeking remand to the Fourth JDC, costs, and attorney's fees.

II. <u>Law and Analysis</u>

    A. <u>Standards governing the Motion to Remand.</u>

A federal court's jurisdiction is limited to areas authorized by the United States Constitution and acts of Congress. <u>See</u> <u>Scarlott v. Nissan N. Am., Inc.</u>, 771 F.3d 883, 887 (5th Cir. 2014). Remand is required "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c).

A federal court has "diversity jurisdiction" where the amount-in-controversy exceeds $75,000, exclusive of interest and costs, and where complete diversity exists. <u>See</u> 28 U.S.C. § 1332(a). The removing party bears the burden of establishing diversity jurisdiction. <u>See</u> <u>Mumfrey v. CVS Pharmacy, Inc.</u>, 719 F.3d 392, 397 (5th Cir. 2013). "Any ambiguities are construed against removal and in favor of remand to state court." <u>Id.</u>

The doctrine of improper joinder is a narrow exception to the complete diversity requirement. <u>Cuevas v. BAC Home Loans Servicing, LP</u>, 648 F.3d 242, 249 (5th Cir. 2011). The removal statutes "entitle a defendant to remove to a federal forum unless an in-state defendant has been 'properly joined.'" <u>Smallwood v. Illinois Cent. R. Co.</u>, 385 F.3d 568, 573 (5th Cir.2004) (citing 28 U.S.C. § 1441(b). "[T]he focus of the inquiry must be on the joinder, not the merits of the plaintiff's case." <u>Id.</u>

"To establish improper joinder, the removing party must demonstrate either: '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff

3

to establish a cause of action against the non-diverse party in state court.'" Cuevas, 648 F.3d at 249 (quoting Smallwood, 385 F.3d at 573). When, as here, the second method is at issue,

> the test is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant. If there is no reasonable basis of recovery, then the court can conclude that the plaintiff's decision to join the in-state defendant was indeed improper, unless that showing compels the dismissal of all defendants.

Cuevas, 648 F.3d at 249 (internal citations and quotations omitted) (emphasis added).[1] "A mere theoretical possibility of recovery in state court will not preclude a finding of improper joinder." African Methodist Episcopal Church v. Lucien, 756 F.3d 788, 793 (5th Cir. 2014). Removing defendants bear the "heavy burden" of establishing improper joinder. See Travis v. Irby, 326 F.3d 644, 649 (5th Cir. 2003).

### B. Because the PCF Proceeding against St. Francis was ongoing at the time of removal, joinder was improper.

It is clear that "a non-diverse defendant is improperly joined if the plaintiff fails to exhaust his claims before filing suit." Flagg v. Stryker Corp., 819 F.3d 132, 138 (5th Cir. 2016); accord Bourne v. Eli Lilly & Co., CIV.A. 05-1212, 2005 WL 2998914, at *3 (W.D. La. Nov. 8, 2005), aff'd, CIV.A. 05-1212, 2006 WL 273614 (W.D. La. Jan. 31, 2006) ("[A] qualified healthcare provider is not subject to suit until after the medical review panel proceeding is complete."). The LMMA's exhaustion requirements are equally clear:

---

[1] Defendants do not suggest there is actual fraud in the pleadings. Rather, Defendants argue that Plaintiffs cannot recover against St. Francis.

> The [LMMA] provides in relevant part that "[n]o action against a health care provider . . . may be commenced in any court before the claimant's proposed complaint has been presented to a medical review panel." The Supreme Court of Louisiana has interpreted this provision to not only require the plaintiff to present the claim to a medical review panel, but also to wait until "the panel has rendered its expert opinion on the merits of the complaint" before filing suit. With exceptions inapplicable to the facts of this case, "the plaintiff's suit must be dismissed" without prejudice if the plaintiff fails to satisfy this exhaustion requirement before filing suit.

Flagg, 819 F.3d at 137-38.

On face, these rules appear decisive. Plaintiffs filed the PCF Proceeding and named St. Francis. Plaintiffs did so before filing this lawsuit. In instituting the PCF Proceeding, and in stating nearly identical allegations against St. Francis in the PCF Proceeding, Plaintiffs effectively admitted their claims against St. Francis are subject to the LMMA. See Ellis v. Ethicon, Inc., CIVA 09-949-JJB-SCR, 2010 WL 1251640, at *4 (M.D. La. Feb. 19, 2010), report and recommendation adopted, CIV.A.09-949JJBSCR, 2010 WL 1142045 (M.D. La. Mar. 24, 2010) ("Any argument to the contrary is belied by the plaintiff's own Petition to Establish a Medical Review Panel . . . ."). The remaining elements of Defendants' position – that St. Francis is a qualified health care provider subject to the LMMA, and that the PCF Proceeding against St. Francis was not resolved before removal – are undisputed.

On face, therefore, removal seems to have been clearly proper. Plaintiffs nevertheless advance several arguments to justify remand. None is persuasive.

First, Plaintiffs attempt to distance this case from the Fifth Circuit's decision in Flagg. Plaintiffs claim that, in Flagg, the non-removing plaintiff conceded he had failed to exhaust his administrative remedies by filing a motion to stay pending

5

completion of the PCF proceeding. That is true. Plaintiffs claim this procedural distinction somehow renders <u>Flagg</u> inapposite here. But whether Plaintiffs have "conceded" it or not, their own filings, and the record as a whole, clearly show the PCF Proceeding against St. Francis was ongoing at the time of removal. In fact, Plaintiffs filed discovery responses from St. Francis in the PCF Proceeding as an attachment to their Motion to Remand. Plaintiffs received those responses from St. Francis *after filing this lawsuit.* This argument is meritless. <u>Flagg</u> controls.

Second, Plaintiffs allege their claims are not – or at least not *all* – medical malpractice claims. Specifically, Plaintiffs claim St. Francis made "ministerial" decisions outside the scope of Stacey Aultman's treatment, and later suggest a possible "negligent hiring" claim.

However, Plaintiffs' pleadings at the time of removal do not reflect these distinctions. Instead, Plaintiffs allege that all named defendants committed a litany of "negligent" acts, including failure to evaluate, treat, and diagnose Stacey Aultman; failure to consult and communicate; failure to act reasonably within the standard of care; and all other acts of negligence which may be seen by an "objective reviewer" or later discovered. (Doc. 1-1, pp. 3-4).

In the Petition, Plaintiffs do not claim that St. Francis engaged in "ministerial acts" or negligently hired anyone. Plaintiffs would have to now amend the Petition to assert that claim.

It is well settled that "[t]he jurisdictional facts that support removal must be judged at the time of the removal." <u>Gebbia v. Wal-Mart Stores, Inc.</u>, 233 F.3d 880,

883 (5th Cir. 2000); accord Flagg, 819 F.3d at 140. Post-removal events – including amendments – generally do not justify remand. See Gordon v. Air Liquide-Big Three Inc., CIV.A. 12-396-SDD, 2013 WL 3490725, at *3 n.21 (M.D. La. July 10, 2013) (quoting Cavallini v. State Farm Mut. Auto Ins. Co., 44 F.3d 256, 265 (5th Cir. 1995)). Rather, "a post-removal amendment that attempts to alter the causes of action alleged in the state petition will not defeat jurisdiction of a case that is properly removed." Oiler v. Biomet Orthopedics, Inc., CIV.A. 02-3778, 2003 WL 22174285, at *2 (E.D. La. Sept. 17, 2003). ""Without such a rule, disposition of the issue would never be final, but would instead have to be revisited every time the plaintiff sought to amend the complaint to assert a new cause of action against the nondiverse defendant, all at considerable expense and delay to the parties and the state and federal courts involved.'" Petroleum Helicopters, Inc. v. Apical Indus., Inc., 6:13-CV-00015, 2013 WL 2297066, at *7 (W.D. La. May 23, 2013) (quoting Cavallini, 44 F.3d at 264).

Further, Plaintiffs argue that their claims sound in ordinary negligence rather than malpractice. But Plaintiffs ignore "[t]he general rule . . . that any conduct by a hospital of which a patient complains is within the scope of the MMA if it comes within the definitions of the MMA, even if there are alternative theories of liability." Dinnat v. Texada, 2009-665 (La.App. 3 Cir. 2/10/10, 4), 30 So.3d 1139, 1142, writ denied, 2010-0540 (La. 6/18/10), 38 So.3d 322. By definition, malpractice is "any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to

7

a patient, including failure to render services timely and the handling of a patient." La. R.S. 40:1299.41(A)(13). Plaintiffs' allegations that St. Francis – whether alone or in concert with the Diverse Defendants – failed to evaluate, treat, and diagnose Stacey Aultman, consult and communicate, and act reasonably within the standard of care, all constitute allegations of "malpractice."[2]

Finally, Plaintiffs maintain "there are ample questions left to be resolved on the issue of borrowed employees and negligent hiring." (Doc. 11-1, p. 6). However, any such "questions" were not raised by pleadings. Therefore, like a suggested negligent hiring claim, any argument regarding borrowed employees constitutes a post-removal event which would not affect this Court's jurisdiction. Moreover,

---

[2] Defendants also briefed the six-factor test set forth in Coleman v. Deno, 2001-1517 (La. 1/25/02, 17), 813 So.2d 303, 315. The factors are intended to assist courts in determining whether a claim sounds in "medical malpractice" under the LMMA:

> [1] whether the particular wrong is "treatment related" or caused by a dereliction of professional skill, [2] whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached, . . . [3] whether the pertinent act or omission involved assessment of the patient's condition. . . . [4] whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform, [5] whether the injury would have occurred if the patient had not sought treatment, and [6] whether the tort alleged was intentional.

Id. at 315–16. Given the findings above, analysis of the Coleman factors is not necessary to conclude Plaintiffs' claims against St. Francis sound in "malpractice." But given Plaintiffs' general allegations against Defendants, the Court finds that each of the six Coleman factors also indicates that the LMMA applies.

First, Plaintiffs clearly maintain St. Francis's liability is "treatment related." Second, expert testimony would likely be required to determine, among other things, whether St. Francis breached the standard of care in facilitating communications between the surgeons and Diverse Defendants. Third, Plaintiffs allege St. Francis failed to properly monitor and/or treat Stacey Aultman, and to facilitate communication regarding Stacey Aultman's condition. Fourth, Stacey Aultman's surgery plainly took place within the scope of activities that St. Francis is licensed to perform. Fifth, Plaintiffs allege Stacey Aultman's injury would not have occurred had Stacey Aultman not sought treatment at St. Francis. And sixth, Stacey Aultman does not allege that St. Francis committed an intentional tort.

Plaintiffs fail to explain how any such argument would establish that St. Francis was not improperly joined. St. Francis would remain a qualified healthcare provider under the LMMA, and the claims against it would necessarily be subject to a medical panel review under the LMMA. See, e.g., McMillian v. Westwood Manor Nursing Home, Inc., 2012-54 (La. App. 3 Cir. 5/30/12, 3), 92 So.3d 623, 625, writ denied, 2012-1857 (La. 11/9/12), 100 So.3d 839 ("[T]he allegations in the petition [including allegations of vicarious liability for a nursing home attendant's negligence in transferring a patient from a chair to bed] assert facts that fall squarely within the definition of 'malpractice' in La.R.S. 40:1299.41(A)(13).").[3]

Because Plaintiffs failed to exhaust their remedies in the PCF Proceeding before filing suit, St. Frances was improperly joined.

### III. Conclusion

For the foregoing reasons, IT IS RECOMMENDED that the Motion to Remand (Doc. 11) filed by Plaintiffs, Stacey and Heather Aultman, be DENIED.

IT IS FURTHER RECOMMENDED that the claims against Defendant St. Francis Medical Center be DISMISSED WITHOUT PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with

---

[3] The parties filed supplemental briefs addressing whether Plaintiffs' could simultaneously assert "dual" claims against St. Francis. Upon further review, the Court does not view this issue as dispositive in this case. As noted above, Plaintiffs asserted essentially the same claims against St. Francis in both state court and the PCF Proceeding. Under those circumstances, Flagg governs, and remand is unwarranted. As noted above, there simply are no "dual" allegations which may be properly considered, because none were asserted before removal.

the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this \_\_15th\_\_ day of February, 2017.

_____
Joseph H.L. Perez-Montes
United States Magistrate Judge