UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| STACEY AULTMAN, ET AL.<br>Plaintiff | CIVIL ACTION NO. 3:16-CV-01133 |
| VERSUS | JUDGE JAMES |
| ST. FRANCIS MEDICAL CENTER, ET AL.<br>Defendants | MAGISTRATE JUDGE PEREZ-MONTES |

REPORT AND RECOMMENDATION

Before the Court is a Motion to Dismiss (Doc. 10) filed by Defendants Dr. Vijay Maggio ("Dr. Maggio"), Amanda Schaefer ("Schaefer"), and Biotronic National, LLC ("Biotronic") (collectively herein, "Defendants"). The remaining Defendant – St. Francis Medical Center – is alleged to have been improperly joined, and is therefore not a movant. Plaintiffs oppose the Motion.

Because Plaintiffs' allegations – broadly and favorably construed – raise their right to recover against Defendants above a speculative level, the Motion to Dismiss should be denied.

I. Background

On October 10, 2014, Plaintiff Stacey Aultman underwent an extreme lateral interbody fusion at St. Francis Medical Center.[1] Plaintiffs allege that, after the surgery, Stacey Aultman remained paralyzed in his bilateral lower extremities, and is now bound to a wheelchair.

---

[1] Drs. Bernie McHugh and Walter Sartor performed the surgery. Neither are parties to this lawsuit.

1

Defendants performed various assistive roles in the surgery. Biotronic provided remote nervous system monitoring services to the surgeons. Dr. Maggio and Schaefer were Biotronic employees who assisted in providing those services. Plaintiffs maintain that each of the participants in Stacey Aultman's surgery were negligent, and thus, caused or contributed to his injuries. Plaintiffs' specific allegations are recounted more fully below.

On August 20, 2015, Plaintiffs filed a medical malpractice complaint with the Louisiana Patients' Compensation Fund (the "PCF"). In their original PCF complaint, Plaintiffs requested review of the treatment provided by St. Francis, Ouachita Neurosurgery Center, Dr. McHugh, and Dr. Sartor. Plaintiffs supplemented on May 16, 2016, adding Defendants to their PCF complaint. Nine days later, the PCF informed Plaintiffs that Defendants were not "qualified health care providers" under the Louisiana Medical Malpractice Act, La. R.S. 40:1299.41, *et seq.* St. Francis remains a party to the PCF Proceeding.

On June 23, 2016, Plaintiffs filed this lawsuit in the Fourth Judicial District Court in Ouachita Parish, Louisiana. Plaintiffs' allegations are nearly identical to those made in the PCF Proceeding. Defendants removed, alleging St. Francis was improperly joined and the remaining Defendants were all diverse.

Defendants then moved for dismissal, arguing Plaintiffs have failed to adequately allege Defendants' "negligence." Plaintiffs maintain that their factual allegations are sufficient to survive scrutiny under Fed. R. Civ. P. 12(b)(6), and that the doctrine of *res ipsa loquitur* applies.

II.   Law and Analysis

   A.   Standards governing the Motion to Dismiss.

A court may grant a motion to dismiss for "failure to state a claim upon which relief can be granted" under Fed. R. Civ. P. 12(b)(6). "[A] complaint will survive dismissal for failure to state a claim if it contains 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Legate v. Livingston, 822 F.3d 207, 210 (5th Cir. 2016) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)) (internal citation and quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

"'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" Anderson v. Valdez, 845 F.3d 580, 589 (5th Cir. 2016) (quoting Iqbal, 556 U.S. at 678). While detailed factual allegations are not necessary, the "'allegations must be enough to raise a right to relief above the speculative level.'" Anderson, 845 F.3d at 589 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The court must view all well-pleaded facts in the light most favorable to the plaintiff. Yumilicious Franchise, L.L.C. v. Barrie, 819 F.3d 170, 174 (5th Cir. 2016). "Motions to dismiss under Rule 12(b)(6) 'are viewed with disfavor and are rarely granted.'" Lormand v. US Unwired, Inc., 565 F.3d 228, 232 (5th Cir. 2009) (quoting Test Masters Educ. Servs., Inc. v. Singh, 428 F.3d 559, 570 (5th Cir. 2005)).

B.     **Plaintiffs' have adequately plead a potential claim against Defendants.**

Plaintiffs claim that Defendants – Biotronic, and its employees, Dr. Maggio and Schaeffer – performed remote monitoring services during Stacey Aultman's surgery. The surgery lasted five hours and 27 minutes. The sum of Plaintiffs' factual allegations regarding Defendants' activities are as follows:

> During the surgery, at approximately 10:13 a.m., it was noted by the monitors that the TcEMPs were present and enhanced, however only marginally present right foot and not present in legs or left foot. Dr. McHugh was notified and acknowledged this at that point in time. Again, at 10:32 a.m., it is noted that "4/4 LPTN, TcEMPs hands-only present, not legs, nor feet. 200 MA; 0.5 MS, 358Z." The absence of monitoring in the legs is again noted at 10:56 a.m. Despite being notified by the operative spine monitor team, Dr. McHugh proceeded with the surgery.
>
> At approximately 12:37 p.m., there was again noted a significant decrease bilaterally in the electrical monitoring. Monitoring now indicated it was absent and this was discussed and the surgeon, Dr. McHugh, was notified, instead of waking the patient up, again Dr. McHugh proceeded with the surgery. At 1:00 p.m., it was again noted that the responses were absent, and the surgeon was informed but proceeded with the surgery. Instead of determining what was causing the lack of monitoring, the surgeon, Dr. McHugh, decided to close the patient and get an MRI, which caused further delays in determining the etiology of the problems causing the neurological impairment to the patient, which had been present since 10:13 a.m.

(Doc. 1-1, pp. 2-3). Plaintiffs then generally state:

> The defendants were negligent in the following respects:
>
> 1.     Failure to properly evaluate and monitor the patient;
>
> 2.     Failure to properly treat the patient;
>
> 3.     Failure to properly diagnose the patient;

4

4. Failure to properly consult and discuss the case with other physicians;

5. Failure to properly convey information to other physicians;

6. Failure to have proper procedures in place to avoid mistakes in forwarding information;

7. All other acts as seen on objective review by a qualified healthcare provider;

8. Failure to act reasonably and within the standard of care; and

9. Any other act or acts of negligence that plaintiffs do not recognize or identify.

(Id., pp. 3-4).

The Court shares Defendants' concern regarding the generality of these allegations. The Court also notes that the gravamen of Plaintiffs' allegations appears to be that Dr. McHugh received monitoring information from Defendants, but ignored, misconstrued, or misapplied that information during the surgery. Defendants do not seem to be the focus of Plaintiffs' factual narrative, at least as stated in the Petition.

However, for purposes of a motion to dismiss, "the face of the complaint must [merely] contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiffs' claim." Voorhies v. Administrators of Tulane Educ. Fund, CIV.A. 11-3117, 2012 WL 1672748, at *4 (E.D.

La. May 14, 2012).² This is plainly a minimal requirement. As one oft-cited opinion from a sister circuit put it, "[o]ne pleads a 'claim for relief' by briefly describing the events. At this stage the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint." Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc., 40 F.3d 247, 251 (7th Cir.1994), as amended on denial of reh'g (Jan. 11, 1995). And critically, the Court must also "draw all reasonable inferences in the plaintiff's favor." Lormand, 565 F.3d at 239.

The reasonable inferences which may be drawn from Plaintiffs' Petition are sufficient – although perhaps barely sufficient – to survive the Motion to Dismiss. Plaintiffs' allegations do make some issues clear. First, Defendants' monitoring services were a crucial component of the surgery. Stacey Aultman's neurophysiological condition purportedly informed Dr. McHugh's decisions throughout the surgery. Second, Plaintiffs allege that some aspect of that condition – and the detection, evaluation, or communication of that condition – seems to have been a cause of Stacey Aultman's continued partial paralysis.

The Court must construe these issues in concert with Plaintiffs' allegations that "Defendants" failed to properly evaluate and monitor Stacey Aultman, failed to properly diagnose and treat Stacey Aultman, and failed to properly communicate information with one another during the procedure. The Court must also construe

---

² To recover against Defendants for medical malpractice, Plaintiffs must establish (1) the applicable standard of care; (2) a breach of that standard; and (3) a causal connection between the breach and the alleged injury. See Boudreaux v. Mid-Continent Cas. Co., 2005-2453 (La.App. 1 Cir. 11/3/06, 6), 950 So.2d 839, 844, writ denied sub nom. Boudreaux v. Mid-Continent Cas., 2006-2775 (La. 1/26/07), 948 So.2d 171.

these allegations broadly and favorably to Plaintiffs. Although the Petition does not make it entirely clear, Plaintiffs' allegations suggest that Defendants' monitoring information was in some way flawed, or that Defendants did not effectively or accurately communicate information with Dr. McHugh during the surgery. These combined allegations raise Plaintiffs' possibility of recovery against Defendants above a speculative level, particularly given the possibility of additional information being adduced during discovery. The Court does not reach the issue of *res ipsa loquitur.*

### III. Conclusion

For the foregoing reasons, IT IS RECOMMENDED that the Motion to Dismiss (Doc. 10) filed by Defendants be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed.R.Civ.P.

6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this 15th day of February, 2017.

Joseph H.L. Perez-Montes
United States Magistrate Judge