# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | |
|---|---|
| STACEY AULTMAN, ET AL. | CIVIL ACTION NO. 16-1133 |
| VERSUS | JUDGE ROBERT G. JAMES |
| VIJAY MAGGIO, ET AL. | MAG. JUDGE JOSEPH H L PEREZ-MONTES |

## RULING

Before the Court is a Motion for Summary Judgment [Doc. No. 53] filed by Defendants Vijay Maggio, M.D. ("Dr. Maggio"), Amanda Schaefer ("Schaefer"), and Biotronic National, LLC ("Biotronic"). Plaintiffs Stacey Aultman and Heather Aultman oppose the motion. [Doc. No. 57]. For reasons assigned below, the Motion for Summary Judgment is GRANTED.

**I.  FACTS AND PROCEDURAL HISTORY**

Defendants provide intraoperative neurophysiological monitoring ("IONM") services at the request of surgeons and healthcare facilities. IONM is a technique used during surgery to monitor the condition of a patient's neural structures (e.g., nerves, spinal cord, and parts of the brain) during the surgical procedure.

On October 10, 2014, Dr. Bernie G. McHugh, Jr. and Dr. Walter Sartor performed a T5-6 extreme lateral interbody fusion on Plaintiff Stacey Aultman ("Mr. Aultman") at St. Francis Medical Center.[1] At Dr. McHugh's request, Defendant Biotronic provided IONM during the surgery. Dr. McHugh, specifically, requested three types of IONM: Intraoperative Somatosensory Evoked Potentials ("SSEPs"), Intraoperative EMG, and Transcranial Motor Evoked Potentials ("TcMEPs").

---

[1] Drs. McHugh and Sartor are not parties.

Dr. McHugh obtained a baseline for each type of IONM. A baseline establishes the waveforms for each type of IONM specific to the patient and the surgery. All subsequent waveforms are compared to the baselines to determine whether there is any change.

Biotronic provides monitoring personnel to advise the surgeon of the monitoring results. Micael Beebe ("Beebe"), a neural technologist, and Dr. Maggio, a neurologist, were Biotronic's employees at the time of the surgery, and both participated in Mr. Aultman's surgery.[2] Beebe was present in the operating room and prepared Mr. Autlman for IONM by connecting the requisite electrodes. Dr. Maggio participated remotely and provided online oversight.

Before Dr. McHugh completed surgery, all SSEPs were present and consistent.[3] However, subsequent to completion, all SSEPs were absent, indicating that something was affecting Mr. Autlman's spinal sensory pathways. When Mr. Aultman awoke from surgery, he had no movement in his lower limbs. According to Plaintiffs, Mr. Aultman is "now wheelchair bound" and "will never be able to walk again." [Doc. No. 57, p. 4].

Plaintiffs filed suit against Defendants Dr. Maggio, Schaefer, Biotronic, and St. Francis Medical Center in state court on June 23, 2016.[4] [Doc. No. 1-4, p. 3]. Plaintiffs allege, generally, that Defendants failed to properly communicate information to the surgeons. [Doc. Nos. 1; 57].

---

[2] Dr. Maggio, Schaefer, and Biotronic are not qualified health care providers under the Louisiana Medical Malpractice Act.

[3] According to Defendants: "SSEPs trace sensory nerve pathways. The signals show whether the nerves that connect to the spinal cord are able to send and receive sensory information like pain, temperature, and touch." [Doc. No. 53-1, p. 9].

[4] This Court dismissed Plaintiffs' claims against St. Francis Medical Center on March 10, 2017. [Doc. No. 27].

While the parties seem to agree that Defendants provided IONM results to the surgeons,[5] Plaintiffs allege that Defendants failed to communicate the significance of the results.[6] [Doc. No. 57, p. 5-6].

Defendants removed the suit to this Court on August 2, 2016. [Doc. No. 1]. On July 27, 2017, Defendants moved for summary judgment, arguing that the "evidence establishes that [they] did not breach any duty owed to Plaintiffs." [Doc. Nos. 53; 53-1, p. 5]. Defendants contend that they "properly performed the IONM and kept Dr. McHugh fully informed of the IONM results . . . ." [Doc. No. 53-1, p. 10]. In response to Plaintiffs' invocation of res ipsa loquitur and allegation of lack of informed consent, Defendants argue that the former does not apply and that Mr. Aultman did provide informed consent.

Plaintiffs responded to the motion on August 18, 2017. [Doc. No. 57]. Defendants filed two replies, one on August 29, 2017, [Doc. No. 59], and another on November 6, 2017, [Doc. No. 66].

## II.  LAW AND ANALYSIS

### A.  Summary Judgment Standard

Summary judgment is appropriate when the evidence before a court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

---

[5] For instance, Plaintiffs allege that: (1) Defendants notified Dr. McHugh "that TcMEPs were present and enhanced"; (2) "Despite being notified by the operative spine monitor team, Dr. McHugh proceeded with the surgery"; (3) "Monitoring now indicated [electrical monitoring] was absent and this was discussed and the surgeon, Dr. McHugh, was notified"; and (4) "it was again noted that the responses were absent, and the surgeon was informed but proceeded with the surgery." [Doc. No. 1, p. 4-5].

[6] Magistrate Judge Perez-Montes aptly noted in a prior Report and Recommendation that the "gravamen of Plaintiffs' allegations appears to be that Dr. McHugh received monitoring information from Defendants, but ignored, misconstrued, or misapplied that information during the surgery." [Doc. No. 25, p. 5]. He noted further, "Defendants do not seem to be the focus of Plaintiffs' factual narrative . . . ." *Id.*

FED. R. CIV. P. 56(a). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id*.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id*. "The court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3).[7]

In evaluating a motion for summary judgment, courts "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E & P USA Inc. v. Kerr–McGee Oil and Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted). While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th

---

[7] However, Rule 56 does not require a court to "sift through the record in search of evidence to support a party's opposition to summary judgment." *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) (quoted source omitted).

Cir. 1994). To rebut a properly supported motion for summary judgment, the opposing party must show, with "*significant* probative evidence," that a genuine issue of material fact exists. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (emphasis added). "'If the evidence is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Tech. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 517 (5th Cir. 2012) (quoting *Anderson*, 477 U.S. at 248).

Relatedly, there can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322-23. This is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323.

### B. Claims Against Schaefer

While Plaintiffs initially alleged that Schaefer assisted the surgeons during the surgery, Plaintiffs now admit that Micael Beebe, rather than Schaefer, was the "actual technologist in the room . . . ." [Doc. No. 57, p. 4]. Plaintiffs also state, "Beebe was the only employee of [Biotronic] present in the operating suite during the procedure . . . ." *Id.* at 2.

Because Schaefer was not involved in the surgery, she could not have caused Mr. Aultman's alleged injuries. To this extent, Defendants' Motion for Summary Judgment is GRANTED, and Plaintiffs' claims against Schaefer are DISMISSED WITH PREJUDICE.[8]

---

[8] *See Richard v. Wijayasuriya*, 93-1410 (La. App. 3 Cir. 10/5/94), 645 So. 2d 708, 711 (affirming summary judgment in favor of a physician who did not become involved in the plaintiff's treatment until after the plaintiff became paralyzed and reasoning that the physician "cannot be held accountable for something that occurred before his involvement.").

### C. Plaintiffs' Negligence Claims

Plaintiffs assert negligence claims against the remaining Defendants. Defendants argue that they did not breach any duty owed. [Doc. No. 53-1, p. 5]. Plaintiffs disagree and respond that Defendants did not properly communicate with the surgeons or did not convey the significance of what they did communicate. [Doc. No. 57, p. 6].

#### i. Negligence Standard

Louisiana Revised Statute 9:2794 provides that in a medical malpractice action, the plaintiff has the burden, by a preponderance of the evidence, of proving:

> (1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians . . . licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians . . . within the involved medical specialty.
>
> (2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill.
>
> (3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.

LA. REV. STAT. § 9:2794. In short, "the plaintiff must establish by a preponderance of the evidence the applicable standard of care, a violation of that standard of care, and a causal connection between the alleged negligence and the plaintiff's injuries." *Lee v. Quinn*, 2017-0070, 2017 WL 4081883 at *6 (La. App. 1 Cir. 9/15/17).

#### ii. Plaintiffs' Duty to Provide Expert Testimony

Plaintiffs must produce expert testimony to establish a genuine dispute concerning both the

6

duty Defendants owed and whether Defendants breached that duty.

"Expert testimony is generally required to establish the applicable standard of care and whether that standard of care was breached, except where the negligence is so obvious that a lay person can infer negligence without the guidance of expert testimony."[9] *Id.* Examples of obviously negligent acts "not requiring expert testimony include 'fracturing a leg during examination, amputating the wrong arm, dropping a knife, scalpel, or acid on a patient, or leaving a sponge in a patient's body.'" *Id.* (quoting *Pfiffner v. Correa*, 94-0924 (La. 10/17/94), 643 So. 2d 1228, 1233). "Failure to attend a patient when the circumstances demonstrate the serious consequences of this failure, and failure of an on-call physician to respond to an emergency when he knows or should know that his presence is necessary are also examples of obvious negligence which require no expert testimony to demonstrate the physician's fault." *Pfiffner*, 643 So. 2d at 1233. Leaving a seriously injured patient to bleed to death in an emergency room serves as yet another example of obvious negligence. *Id.* at 1234.

"Expert testimony is especially necessary where the defendant in a medical malpractice action has filed a motion for summary judgment supported by expert opinion evidence that the treatment met the applicable standard of care." *Henderson v. Homer Memorial Hosp.*, 40,585 (La. App. 2 Cir. 1/27/06), 920 So.2d 988, 996. "Because of the complex medical and factual issues involved in medical malpractice cases, a plaintiff will likely fail to sustain his or her burden of proving his or her claim under La. R.S. 9:2794 without medical experts." *Richardson*, 2017 WL at

---

[9] "In a medical malpractice action, opinions of expert witnesses who are members of the medical profession and who are qualified to testify on the subject are necessary to determine whether or not physicians possessed the requisite degree of knowledge or skill, or failed to exercise reasonable care and diligence." *Richardson v. Cotter*, 51,637, 2017 WL 4273441, at *6 (La. App. 2 Cir. 9/27/17).

*5.[10]

Here, Defendants' alleged negligence—failure to effectively communicate neurophysiological monitoring results, as well as the significance of those results—is neither equivalent to any of the examples set forth above nor so obvious that a lay person can infer negligence without expert testimony.[11] Of note, Plaintiffs do not identify the information that Defendants failed to communicate or failed to communicate properly. Nor do Plaintiffs explain when, why, or how Defendants should have emphasized the significance of the IONM results that they provided to the surgeons.

Without identifying, with specificity, how Defendants were negligent, the alleged negligence here is far from obvious to the lay person.[12] An average lay person, without the aid of expert testimony, is unfamiliar with IONM or the variations of IONM, is incapable of interpreting IONM results, is not cognizant of the monitoring results that a physician should relay to a surgeon performing an extreme lateral interbody fusion, is ignorant of whether and when a physician performing IONM should convey the significance of results to surgeons, and is unfit to determine what information a surgeon would deem "significant."[13] This is all to say—and the record

---

[10] *See Brown v. Tulane Med. Ctr. Hosp. & Clinic*, 2004-0688 (La. App. 4 Cir. 5/9/07), 958 So. 2d 87, 90 ("An absence of expert testimony that the physician breached the proper standard of care precludes a finding of liability for medical malpractice.").

[11] Plaintiffs make no attempt to characterize the alleged negligence as "so obvious that a lay person can infer negligence without the guidance of expert testimony."

[12] "Lay jurors with common knowledge and ordinary experience cannot be expected to infer from the circumstances surrounding an injury incurred during medical procedures whether the health care provider failed to use reasonable care . . . ." *Cangelosi v. Our Lady of the Lake Regional Medical Center*, 564 So. 2d 654, 667 n. 11 (La. 1989).

[13] *See James v. Lake View Reg'l Med. Ctr.*, 2016-1103, 2017 WL 1376574 at *4 (La. App. 1 Cir. 4/12/17) (holding that an incident where a nurse inserted a tube down a patient's

supports—that IONM and the issues at bar are complex, and Plaintiffs must produce expert testimony to establish a genuine dispute regarding the standard of care, a violation of the standard of care, and causation.

### iii. Failure to Present Expert Testimony

Defendants present evidence indicating that they did not breach any standard of care owed to Plaintiffs, and Plaintiffs fail to present any expert evidence to the contrary.

Dr. McHugh averred: (1) "I have no complaints or criticisms of Biotronic or any of its employees involved with the intraoperative neural monitoring during the subject procedures;" (2) "I have no complaints or criticisms regarding the monitoring performed by Biotronic and its employees during the subject procedures;" and (3) "Biotronic and its employees kept me fully informed of the results of their neural monitoring during the subject procedures." [Doc. No. 53-3, p. 199]. In addition, Dr. Sartor responded, "No," when asked if he had "any criticisms of the intraoperative neuromonitoring . . . ." [Doc. No. 59-1, p. 3].

Plaintiffs respond with one report from an expert who offers no criticism of Defendants and, more importantly, does not opine that Defendants breached any standard of care.[14] [*See* Doc. No. 57-1, p. 2]. Aside from that, Plaintiffs provide no expert evidence that Defendants lacked the

---

throat and, thereafter, the patient experienced vocal cord paralysis was not an obviously careless act and expert testimony was necessary); *McGrew v. Waguespack*, 2014-0251 (La. App. 1 Cir. 12/30/14), 168 So. 3d 690, 696 (finding expert testimony necessary where the plaintiff alleged that he suffered permanent paralysis to his legs as a result of an alleged negligent placement of a spinal cord stimulator).

[14] *See generally Intra-Op Monitoring Servs., LLC v. Causey*, 2012 WL 2849281, at *3 (Tex. App. July 12, 2012) (concluding that an expert report on IONM was inadequate because it did not identify which of several defendants failed to properly interpret the monitoring data, what monitoring data was not properly interpreted, what standards apply, and what information should have been provided).

9

requisite degree of knowledge or skill or failed to use reasonable care and diligence. Without expert evidence, there is no genuine dispute surrounding whether Plaintiffs can prove the standard of care or a violation of the standard of care—elements essential to Plaintiffs' case—by a preponderance of the evidence.[15]

### iv. Res Ipsa Loquitur

Plaintiffs pled, perfunctorily, res ipsa loquitur in their Complaint. [Doc. No. 1-4, p. 6]. Defendants argue that the doctrine is inapplicable because paralysis is an injury that may ordinarily occur in the absence of negligence and because the evidence does not sufficiently eliminate other more probable causes of Mr. Aultman's alleged injury. Plaintiffs offer no response.

"The principle of res ipsa loquitur is a rule of circumstantial evidence that infers negligence on the part of defendants because the facts of the case indicate that the negligence of the defendant is the probable cause of the accident, in the absence of other equally probable explanations offered by credible witnesses." *Montgomery v. Opelousas Gen. Hosp.*, 540 So. 2d 312, 319 (La. 1989). A plaintiff must show that three requirements are met: "(1) the injury is of the kind which does not ordinarily occur in the absence of negligence on someone's part; (2) the evidence sufficiently eliminates other more probable causes of the injury, such as the conduct of the plaintiff or of a third person; and (3) the alleged negligence of the defendant must be within the scope of the defendant's

---

[15] Plaintiffs do not allege that Defendant Biotronic did anything other than employ Defendants Maggio and Schaefer. [*See* Doc. No. 1-4]. Under LA. CIV. CODE art. 2320, "an employer is subject to vicarious liability for the tortious conduct of his employee, irrespective of his title, while acting within the course and scope of employment." *Brasseaux v. Town of Mamou*, 752 So. 2d 815, 821 (La. 2000). However, in order to maintain a claim for vicarious liability against an employer, there must be a claim against a culpable employee. Here, as the Court finds, for the reasons discussed, that there is no genuine dispute that Defendants Maggio and Schaefer are culpable employees, there is no genuine dispute that Biotronic is vicariously culpable.

duty to the plaintiff." *Linnear v. CenterPoint Energy Entex/Reliant Energy*, 2006-3030 (La. 9/5/07), 966 So. 2d 36, 44.

Res ipsa loquitur does not apply here. Concerning the first factor, res ipsa loquitur is not applicable where the alleged injury "is a recognized complication of the surgery . . . ." *Dardeau v. Ardoin*, 97-144 (La. App. 3 Cir. 11/5/97), 703 So. 2d 695, 698. "The complication may be a remote one so long as all experts agree." *Pommier v. ABC Ins. Co.*, 97-1342 (La. App. 3 Cir. 7/15/98), 715 So. 2d 1270, 1275 (internal quotation marks and quoted sources omitted). Here, Defendants present evidence that paralysis, the alleged injury, is a recognized complication of extreme lateral interbody fusion and can occur in the absence of negligence.[16] [Doc. No. 53-4, p. 147]. Moreover, Dr. McHugh testified that an ischemic event, triggered by Mr. Aultman's prior medical problems, could have caused Mr. Aultman's paralysis. As the Court cannot discount a surgical complication as one possible cause of Mr. Aultman's alleged injury, there is no genuine dispute that the injury can occur in the absence of negligence.

With respect to the second factor set forth above, Plaintiffs offer no evidence to exclude the inference that the surgeons, rather than Defendants, caused the alleged injury. In other words, Plaintiffs do not meet their burden of eliminating other probable, reasonable explanations for their injuries.[17]

---

[16] *See Melancon v. LaRocca*, 94-639 (La. App. 5 Cir. 1/31/95), 650 So. 2d 371, 373 (finding no error where a jury did not apply res ipsa loquitur because the alleged nerve injury was a recognized complication of anterior cervical fusion that could occur in the absence of negligence).

[17] *See Cherry v. Herques*, 623 So. 2d 131, 135 (La. Ct. App. 1993) (Plaintiff in medical malpractice action did not establish foundation of facts on which doctrine of res ipsa loquitur could be applied, where plaintiff offered no expert testimony that negligence could be inferred or that injury would not have happened in absence of negligence).

11

Plaintiffs may not rely on res ipsa loquitur to establish negligence, and Plaintiffs have otherwise failed to raise a genuine dispute of material fact for trial on their negligence claims. Accordingly, Defendants' Motion for Summary Judgment is GRANTED, and Plaintiffs' negligence claims are DISMISSED WITH PREJUDICE.[18]

**D.     Informed Consent**

Plaintiffs allege, without elaborating, that Mr. Aultman did not provide informed consent for the procedure. [Doc. No. 1-4, p. 6]. "A physician is required to provide his patient with sufficient information to allow the patient to make an informed and intelligent decision on whether to submit to the proposed course of treatment." *Deykin v. Ochsner Clinic Found.*, 16-488 (La. App. 5 Cir. 4/26/17), 219 So. 3d 1234, 1242. "In a suit against a physician or other health care provider involving a health care liability or medical malpractice claim which is based on the failure of the physician or other health care provider to disclose or adequately to disclose the risks and hazards involved in the medical care or surgical procedure rendered by the physician or other health care provider, the only theory on which recovery may be obtained is that of negligence in failing to disclose the risks or hazards that could have influenced a reasonable person in making a decision to give or withhold consent." LA. REV. STAT. § 40:1157.1(D).

Here, Defendants present a "Consent for Medical Procedure Acknowledgment of Receipt of Information[,]" signed by Mr. Aultman, authorizing Dr. McHugh to perform an extreme lateral

---

[18] Of emphasis, "even in a malpractice case where the doctrine of res ipsa loquitur is applicable, the plaintiff is still required to present expert testimony to establish the standard of care that should have been used by the provider of medical services." *Blankenship v. Ochsner Clinic Found.*, 2006-0242 (La. App. 4 Cir. 8/16/06), 940 So. 2d 12, 17 (referencing *Cangelosi*, 564 So. 2d at n.11).

interbody fusion and acknowledging that he was informed of the risks[19] of the procedure. [Doc. No. 53-4, p. 147]. Plaintiffs offer no response.[20] Accordingly, Defendants' Motion for Summary Judgment is GRANTED, and Plaintiffs' lack of informed consent claim is DISMISSED WITH PREJUDICE.

## III. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment [Doc. No. 53] is GRANTED, and Plaintiffs' claims against Defendants are DISMISSED WITH PREJUDICE.

Monroe, Louisiana, this 27th day of November, 2017.

*Robert G. James*
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE

---

[19] Mr. Autlman acknowledged that "risks known to be associated" with the procedure included quadriplegia, paraplegia, and loss of function of legs. [Doc. No. 53-4, p. 147].

[20] Written consent to medical treatment "shall be presumed to be valid and effective, in the absence of proof that execution of the consent was induced by misrepresentation of material facts." LA. REV. STAT. § 40:1157.1(A).